## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF ILLINOIS

PAULETTE KREMMEL,                                  )
ANGELA BARNES,                                     )
JAMIE KILGORE,                                     )
TRAVIS GARNER,                                     )
DOMINIQUE MORRISON, and                            )
AMY HILL, individually and on behalf               )
of all others similarly-situated,                  )
                                                   )
    Plaintiffs,                                )
                                                   )        No. 3:17-cv-00147
v.                                                 )
                                                   )
AQ TEXTILES, LLC,                                  )
CREATIVE TEXTILE MILLS PVT. LTD.,                  )
THE TJX COMPANIES, INC. d/b/a                      )
TJ MAXX and HOME GOODS,                            )
ROSS STORES, INC.                                  )
MACY'S RETAIL HOLDINGS, INC., and                  )
BELK, INC.,                                        )
                                                   )
    Defendants.                                )

### CLASS ACTION COMPLAINT

Plaintiffs, Paulette Kremmel, Angela Barnes, Jamie Kilgore, Travis Garner, Dominique Morrison, and Amy Hill, individually and on behalf of all other similarly-situated in the United States, allege the following facts and claims upon personal knowledge, investigation of counsel, and information and belief.

### CASE SUMMARY

1.    This case arises out of Defendants AQ Textiles, LLC ("AQ Textiles"), Creative Textiles Mills Pvt. Ltd. ("Creative Textiles"), The TJX Companies, Inc. d/b/a TJ Maxx and Home Goods, Ross Stores, Inc., Macy's Retail Holdings, Inc., and Belk, Inc.'s (the "Retailer Defendants") (altogether the "Defendants") deceptive, unfair, and false merchandising practices

1

regarding at least the following brands of cotton-rich bed linens manufactured, imported, distributed and sold by Defendants, as follows:

- Bentley Home 600 TC, 650 TC, and 800 TC Luxurious Sateen Weave, Hampton House 600 TC, Home Essential Collection 650 TC, Ultra Lux 1200 TC Luxury Sateen Weave, and Main Street Linens 1000 TC, sold at TJ Maxx;

- Prescott Fine Linens Luxury Sateen 600 TC, Somerset Collection Luxury Sateen 900 TC, Belfast Collection Luxury Sateen 1000 TC, Highland Collection Luxury Sateen 600 TC, and Fairfield Square1000 TC Luxury Sateen, sold at Macy's;

- Legacy Home Collection 750 TC and 1000 TC Luxury Sateen Weave, sold at Belks;

- Hampton House 1200 TC and Grande Estate Fine Linens 800 TC Luxurious Sateen Weave, sold at Ross; and

- Bentley Home 600TC Luxurious Sateen Weave and Kensington Manor 800 TC, sold at Home Goods (the "Products").

2.      On the labels of the Products and in their marketing materials, Defendants represent that the Products are of particular thread counts.

3.      The thread counts of the Products, however, are far less than advertised, meaning the Products are of inferior quality than as represented.

4.      Because the Products do not meet their represented thread counts, the thread count representations about the Products are false, deceptive, and misleading, and the Products are worth far less than they were represented to be.

5.      Plaintiffs bring this case to recover damages for Defendants' false, deceptive, and misleading marketing and advertising in violation of consumer protection statutes and common law.

## PARTIES

6.     Plaintiff Paulette Kremmel is a resident of St. Clair County, Illinois.  Ms. Kremmel purchased Bentley Home 600TC Luxurious Sateen Weave sheets from Home Goods during the Class Period for personal, family, or household purposes.  Plaintiff Kremmel reasonably believed that the sheets she purchased were in fact of 600 thread count, and she was deceived by the false label because the sheets' thread count was in fact far less.

7.     Plaintiff Angela Barnes is a resident of St. Clair County, Illinois.  Ms. Barnes purchased Ultra Lux 1200TC Luxury Sateen Weave sheets from TJ Maxx during the Class Period for personal, family, or household purposes.  Plaintiff Barnes reasonably believed that the sheets she purchased were in fact of 1200 thread count, and she was deceived by the false label because the sheets' thread count was in fact far less.

8.     Plaintiff Jamie Kilgore is a resident of the City of St. Louis, Missouri.  Ms. Kilgore purchased Hampton House 600TC sheets from TJ Maxx during the Class Period for personal, family, or household purposes.  Plaintiff Kilgore reasonably believed that the sheets she purchased were in fact of 600 thread count, and she was deceived by the false label because the sheets' thread count was in fact far less.

9.     Plaintiff Travis Garner is a resident of the City of St. Louis, Missouri.  Mr. Garner purchased Bentley Home 800TC Luxurious Sateen Weave sheets from TJ Maxx during the Class Period for personal, family, or household purposes.  Plaintiff Garner reasonably believed that the sheets he purchased were in fact of 800 thread count, and he was deceived by the false label because the sheets' thread count was in fact far less.

10.     Plaintiff Dominique Morrison is a resident of St. Louis County, Missouri.  Ms. Morrison purchased Grande Estate 800TC Luxurious Sateen Weave sheets from Ross during the

Class Period for personal, family, or household purposes. Plaintiff Morrison reasonably believed that the sheets she purchased were in fact of 800 thread count, and she was deceived by the false label because the sheets' thread count was in fact far less.

11.    Plaintiff Amy Hill is a resident of the City of St. Louis, Missouri. Ms. Hill purchased Fairfield Square 1000TC Luxury Sateen sheets from Macy's during the Class Period for personal, family, or household purposes. Plaintiff Hill reasonably believed that the sheets she purchased were in fact of 1000 thread count, and she was deceived by the false label because the sheets' thread count was in fact far less.

12.    Plaintiff Patricia Campbell is a resident of Flagler County, FL. Ms. Campbell purchased Legacy Home Collection 750TC sheets from Belk's during the Class Period for personal, family, or household purposes. Plaintiff Campbell reasonably believed that the sheets she purchased were in fact of 750 thread count, and she was deceived by the false label because the sheets' thread count was in fact far less.

13.    Plaintiffs' claims are typical of all class members. The labels of each of the Products purchased by Plaintiffs and the Class are substantially similar in that they all uniformly claim that the Products are of a particular thread count when they in fact are not. As a result, they are deceptive, false, and unfair, and injure Plaintiffs and Class members in the same way.

14.    Defendant AQ Textiles, LLC is a North Carolina LLC with its principal place of business at 214 Staunton Drive, Greensboro, North Carolina 27410 or at 7622 Royster Road, Greensboro, NC 27455.

15.    Defendant Creative Textile Mills Pvt. Ltd. is a private limited company organized under the laws of the Republic of India, with its principal place of business at 115/116, Sun

Industrial Estate, Sun Mill Compound, Lower Parel (W), Lower Parel, Mumbai, Maharashtra 400013, India.

16.    Defendant The TJX Companies Inc. is a Delaware corporation with its principal place of business at 770 Cochituate Road, Framingham, MA 01701.  The TJX Companies own and operate TJ Maxx and Home Goods stores.

17.    Defendant Ross Stores, Inc. is a Delaware corporation with its principal place of business at 5130 Hacienda Drive, Dublin, California 94568.

18.    Macy's Retail Holdings, Inc. is a New York corporation with its principal place of business at 7 West Seventh Street, Cincinnati, Ohio 45202.

19.    Belk, Inc. is a Delaware corporation with its principal place of business at 2801 W Tyvola Rd., Charlotte, NC 28217.

## JURISDICTION AND VENUE

20.    This Court has jurisdiction over the subject matter presented by this Class Action Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), which explicitly provides for the original jurisdiction of the federal courts of any class action in which any member of the Putative Class is a citizen of a state different from any Defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,000.00, exclusive of interest and costs, and there are more than 100 class members.

21.    Pursuant to 28 U.S.C. § 1332(d)(2)(A), Plaintiffs allege that damages resulting from the claims in this action are in excess of $5,000,000.00, in the aggregate, exclusive of interest and costs.

22.    This Court has personal jurisdiction over Defendant AQ Textiles because it has had more than minimum contacts with the State of Illinois and has purposefully availed itself of

the privilege of conducting business in this state, and has purposefully directed and targeted business in this state. In addition, as explained below, Defendant has committed affirmative tortious acts within the State of Illinois that give rise to civil liability, including targeting and distributing the misleading Products for sale throughout the State of Illinois.  AQ Textiles delivered the Products into the stream of commerce with the expectation that they would be purchased by or used by consumers in this state.

23.     This Court has personal jurisdiction over Defendant Creative Textiles because it has had more than minimum contacts with the State of Illinois and has purposefully availed itself of the privilege of conducting business in this state, and has purposefully directed and targeted business in this state. In addition, as explained below, Defendant has committed affirmative tortious acts within the State of Illinois that give rise to civil liability, including targeting and distributing the misleading Products for sale throughout the State of Illinois.  Creative Textiles delivered the Products into the stream of commerce with the expectation that they would be purchased by or used by consumers in this state.

24.     This Court has personal jurisdiction over the TJX Companies because it has had more than minimum contacts with the State of Illinois and has purposefully availed itself of the privilege of conducting business in this state, and has purposefully directed and targeted business in this state. TJX owns and operates at least 20 TJ Maxx and at least 10 Home Goods stores in this state.  In addition, as explained below, TJX Companies has committed affirmative tortious acts within the State of Illinois that give rise to civil liability, including selling the misleading Products for sale throughout the State of Illinois.

25.     This Court has personal jurisdiction over Ross because it has had more than minimum contacts with the State of Illinois and has purposefully availed itself of the privilege of

conducting business in this state, and has purposefully directed and targeted business in this state.  Ross has over 50 stores in this state.  In addition, as explained below, Ross has committed affirmative tortious acts within the State of Illinois that give rise to civil liability, including selling the misleading Products for sale throughout the State of Illinois.

26.    This Court has personal jurisdiction over Macy's because it has had more than minimum contacts with the State of Illinois and has purposefully availed itself of the privilege of conducting business in this state, and has purposefully directed and targeted business in this state. Macy's has over 20 stores in the state of Illinois.  In addition, as explained below, Macy's has committed affirmative tortious acts within the State of Illinois that give rise to civil liability, including selling the misleading Products for sale throughout the State of Illinois.

27.    This Court has personal jurisdiction over Belk because it has had more than minimum contacts with the State of Illinois and has purposefully availed itself of the privilege of conducting business in this state, and has purposefully directed and targeted business in this state by operating an interactive website that encourages citizens of Illinois to purchase goods, including the Products, in a continuous and systematic way.

28.    Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(a) because, as set forth below, Defendants conduct business in, and may be found in, this district, and certain Plaintiffs purchased the Products in this judicial District.

## ALLEGATIONS OF FACT

29.    Defendant Creative Textiles manufactures and sells textiles, including the Products, that are imported by its subsidiary AQ Textiles and sold throughout the United States through retail channels, including the Retailer Defendants.

30.     Defendant AQ Textiles, on behalf of Creative Textiles and the Retailer Defendants, imports and distributes the Products to the Retailer Defendants throughout the United States, who in turn sell them to consumers like Plaintiffs and Class Members under at least the following corresponding brand names:

- Bentley Home 600 TC, 650 TC, and 800 TC Luxurious Sateen Weave, Hampton House 600TC, Home Essential Collection 650 TC, Ultra Lux 1200 TC Luxury Sateen Weave, and Main Street Linens 1000 TC, sold at TJ Maxx;

- Prescott Fine Linens Luxury Sateen 600 TC, Somerset Collection Luxury Sateen 900 TC, Belfast Collection Luxury Sateen 1000 TC, Highland Collection Luxury Sateen 600 TC, and Fairfield Square1000 TC Luxury Sateen, sold at Macy's;

- Legacy Home Collection 750 TC and 1000 TC Luxury Sateen Weave, sold at Belks;

- Hampton House 1200 TC and Grande Estate Fine Linens 800 TC Luxurious Sateen Weave, sold at Ross; and

- Bentley Home 600 TC Luxurious Sateen Weave and Kensington Manor 800 TC, sold at Home Goods.

31.     Each of the Products is marked and represented by the Defendants as being made of a particular thread count.

32.     Thread count is a measurement of how many yarns – individual spun threads – can be found in a square inch of fabric. By using smaller and finer yarns, manufacturers can increase the thread count.

33.     The comfort of textiles can be improved by increasing the fabric's thread count. A higher thread count is often recognized as an indication of higher quality and more luxurious

fabric. The higher the represented thread count, the more luxurious and soft the Product is supposed to be.

34.    While thread count is important, so too is the Products' durability. Durability, however, can negatively affect comfort and softness.

35.    Cotton's durability can be increased by weaving it with synthetic fibers, like polyester. Such weaving increases durability while creating the sensation of comfort afforded by cotton.

36.    It is difficult to incorporate synthetic fibers, such as polyester, into a high thread count fabric. Synthetic fibers like polyester become increasingly brittle when made smaller and finer, and they can break when fed into a loom for use in a high thread-count, cotton-polyester-blended fabric-product.

37.    To reduce the cost associated with manufacturing "high thread count," cotton-polyester fabrics, Defendant Creative Textiles twists individual yarns together, then uses the twisted combination as if it was a single yarn in the weaving process. Instead of counting the twisted combination as one yarn, Creative Textiles then counts each individual yarn in the twisted combination when advertising the thread counts of the Products in order to increase the represented thread count and appeal to customers.

38.    Defendants then advertise, distribute, and sell the Products with the misrepresented thread counts.

39.    In addition to the misrepresented thread counts, the appearance and wording of Defendants' Product labels further cause confusion about the quality of the bedding.

40.    As indicated by the representative labels below, the Products' names, such as "Ultra Lux" and "Grande Estate," are laced with overtures of nobility and indulgence and suggest high-end opulence and refined quality,





41.    Defendants' Products are also routinely labeled as "luxurious" or "luxury."









42.    And, the Products' labels are often branded with ornate script and gold embossing and framing.





43.    All of these representations bolster the consumer's belief that the bedding is of the highest quality with the represented thread count, and Plaintiffs, consumers, and class members rely on thread count as a key indicator of fabric quality and comfort when making purchasing decisions.

44.    Despite the representations on the labels, the actual fabric manufactured by Creative Textiles and sold by the Retailer Defendants does not have the luxurious feeling of— and in fact does not result in—truly high thread count sheets.

45.    The ASTM, an international standard-setting organization in the textile industry, instructs manufacturers, importers, and sellers of bed sheets and other woven textile fabric products to calculate thread count by counting "individual warp yarns (ends) and filling yarns (picks) as single units *regardless of whether they are comprised of single or plied components*." ASTM 3775.

46.     In fact, the Federal Trade Commission considers the practice of counting individual yarns within the twisted yarns to be a deceptive act or practice pursuant to Section 5 of the FTC Act, 15 U.S.C. § 45.

47.     Many of Defendants' Products are advertised and sold as having a thread count that is more than double the Products' actual thread count when correctly calculated under the ASTM 3775 Standard.

48.     On information and belief, the Retailer Defendants knew during the Class Period that the Products were being manufactured, imported and sold by them with inflated and untruthful thread counts.  But they have done nothing to remedy the problem or to alert their customers.

49.     Defendants thus misrepresent the nature, characteristics, and qualities of the Products by falsely and misleadingly advertising them with an inflated thread count, in violation of consumer protection laws.

50.     By attempting to pass off the Products as containing higher thread counts than they actually do, Defendants are able to entice consumers like Plaintiffs and the class members to pay a premium for the Products or to pay more for them than they otherwise would have had the truth be known.

51.     Neither Plaintiffs nor any reasonable consumer would expect that Products labeled as containing a particular thread count would in fact contain a far inferior thread count.

52.     As a result of Defendants' deceitful advertising, marketing, and sales practices, Defendants were able to charge and Plaintiffs and Class Members paid a premium for the Products.  The Products were worth less than they were represented to be and were of a less

superior quality than they were represented to be, and Plaintiffs and Class Members paid extra for them due to their misleading labels.

## CLASS ALLEGATIONS

53.    Pursuant to Fed. R. Civ. P. 23(a), (b)(2), and (b)(3), Plaintiffs bring this action on their own behalf and on behalf of the following Classes:

> The Illinois Class:    All citizens of Illinois who purchased any of the Products for personal, household, or family purposes in the five years preceding the filing of this Petition (the "Class Period").
>
> The Florida Class:    All citizens of Florida who purchased any of the Products for personal, household, or family purposes in the five years preceding the filing of this Petition (the "Class Period").
>
> The Missouri Class:    All citizens of Missouri who purchased any of the Products for personal, household, or family purposes in the five years preceding the filing of this Petition (the "Class Period").
>
> The Nationwide Class:    All citizens of the United States who purchased any of the Products for personal, household, or family purposes during the Class Period.

54.    Excluded from the Classes are: (a) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; (b) any entity in which Defendants have a controlling interest, to include, but not limited to, their legal representative, heirs, and successors; (c) all persons who are presently in bankruptcy proceedings or who obtained a bankruptcy discharge in the last three years; and (d) any judicial officer in the lawsuit and/or persons within the third degree of consanguinity to such judge.

55.    Upon information and belief, the Classes consist of millions of purchasers collectively.  Accordingly, it would be impracticable to join all Class Members before the Court.

14

56.    There are numerous and substantial questions of law or fact common to all of the members of the Classes and which predominate over any individual issues.  Included within the common question of law or fact are:

a.    Whether the thread count claims on the Products are false, misleading, and deceptive;

b.    Whether Defendants violated the ICFA, FDUTPA, and/or the MMPA by selling the Products with false, misleading, and deceptive representations;

c.    Whether Defendants' acts constitute deceptive and fraudulent business acts and practices or deceptive, untrue, and misleading advertising;

d.    Whether the labels of the Products create false impressions and have the tendency and capacity to mislead consumers;

e.    Whether Defendants created and breached the express warranty that the Products were of particular thread counts;

f.    Whether Defendants were unjustly enriched; and

g.    The proper measure of damages sustained by Plaintiffs and Class Members.

57.    The claims of the Plaintiffs are typical of the claims of Class Members, in that they share the above-referenced facts and legal claims or questions with Class Members, there is a sufficient relationship between the damage to Plaintiffs and Defendants' conduct affecting Class Members, and Plaintiffs have no interests adverse to the interests other Class Members.

58.    Plaintiffs will fairly and adequately protect the interests of Class Members and have retained counsel experienced and competent in the prosecution of complex class actions including complex questions that arise in consumer protection litigation.

15

59.    A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all Class Members is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

a.    The claim presented in this case predominates over any questions of law or fact, if any exists at all, affecting any individual member of the Classes;

b.    Absent the Classes, the Class Members will continue to suffer damage and Defendants' unlawful conduct will continue without remedy while Defendants profit from and enjoys their ill-gotten gains;

c.    Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendants committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

d.    When the liability of Defendants has been adjudicated, claims of all Class Members can be administered efficiently and/or determined uniformly by the Court; and

e.    This action presents no difficulty that would impede its management by the court as a class action, which is the best available means by which Plaintiffs and members of the Classes can seek redress for the harm caused to them by Defendants.

60.    Because Plaintiffs seek relief for each entire Class, the prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying

16

adjudications with respect to individual member of the Classes, which would establish incompatible standards of conduct for Defendants.

61.    Further, bringing individual claims would overburden the Courts and be an inefficient method of resolving the dispute regarding the Products, which is the center of this litigation.  Adjudications with respect to individual members of the Classes would, as a practical matter, be dispositive of the interest of other members of the Classes who are not parties to the adjudication and may impair or impede their ability to protect their interests.  As a consequence, class treatment is a superior method for adjudication of the issues in this case.

62.    Defendants have acted on grounds that apply generally to the Classes, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

## CLAIMS FOR RELIEF

## COUNT I

### Violation of the ICFA

*(On Behalf of the Illinois Class)*

63.    Plaintiffs repeat and re-allege the allegations of the preceding paragraphs as if fully set forth herein.

64.    The Illinois Consumer Fraud Act ("ICFA") declares the following to be unlawful: "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact…in the conduct of any trade or commerce[.]"  815 Ill. Comp. Stat. Ann. 505/2.

17

65.    In construing the ICFA, consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5(a) of the Federal Trade Commission Act.  815 Ill. Comp. Stat. Ann. 505/2.

66.    Defendants' conduct in advertising and selling the Products as consisting of particular thread counts when they in fact were of far inferior thread counts constitutes the act, use and employment of deception, fraud, false pretenses, false promises, misrepresentation, and unfair practices in the conduct of Defendants' trade or commerce.

67.    Defendants intended that Plaintiffs and the Class Members would rely on their thread count representations.  Defendants are aware that consumers like Plaintiffs and Class Members who purchase the Products are interested in purchasing high quality, fine textiles of a particular quality.  Defendants intended to prey on this interest.

68.    The thread count representations are material because they concerns the type of information upon which a reasonable consumer would be expected to rely in making a decision whether to purchase the Products or not.

69.    Because Defendants are in the business of selling bed linens, Defendants committed the unfair and deceptive acts in the conduct of their trade and commerce.

70.    Defendants' practice of advertising and selling the Products with inflated and false thread counts is also unfair.  The practice offends public policy and is immoral, unethical, and unscrupulous because selling the Products based on falsehoods offends the public's expectation to be told the truth about the contents and quality of the products they are buying. Defendants' conduct therefore causes substantial injury to consumers.

71.    Because the Products were not as represented, the Products as sold were worth less than the Products as represented, and Plaintiffs and class members paid a premium for them.

Had the truth be known, Plaintiffs and Class Members would not have purchased the Products, would have paid less for them, or would have purchased alternative products.

72.    Plaintiffs    and    Class    Members    were    deceived    by    the    thread    count misrepresentations and suffered economic damages as a proximate result of Defendants' unlawful conduct as alleged herein, including the difference between the actual value of the Products and the value of the Products if they had been as represented.

## COUNT II

**Violations of Florida Deceptive and Unfair Trade Practices Act**

(*On Behalf of the Florida Class*)

73. Plaintiffs repeat and re-allege the allegations of the preceding paragraphs as if fully set forth herein.

74.    The Florida Legislature enacted the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") in 1972 to provide strong legal protection to consumers "from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202.

75.    Patterned after the Federal Trade Commission Act, FDUTPA differs in part from its federal counterpart in that it provides a private right of action for declaratory and injunctive relief for "anyone aggrieved by a violation of this part." Fla. Stat. § 501.211(1). FDUTPA also permits an aggrieved party to recover actual damages, plus attorney's fees and court costs. Fla. Stat. § 501.211(1).

76.    Plaintiffs and all Florida Class Members are "consumers" within the meaning of FDUTPA because they are individuals residing in the state of Florida who purchased and received the Products in the state of Florida. Fla. Stat. § 501.203(7) (2012).

77.     Defendants are engaged in trade or commerce within the meaning of FDUTPA because Defendants manufacture, provide, distribute, and sell the Products to consumers in the state of Florida.  Fla. Stat. § 501.203(8).

78.     In conducting their trade and commerce in Florida, Defendants willfully engaged and directly participated in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices by misrepresenting the thread counts of the Products.  Defendants' unfair and deceptive practices have misled reasonable consumers, such as Plaintiffs and members of the Florida Class, and therefore, violated Section 500.04 of the Florida Statutes.

79.     Defendants have thus engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of their trade and commerce.  Fla. Stat. § 501.204(1).  Defendants' unfair, unconscionable, and deceptive practices offend established public policy and are immoral, unethical, unscrupulous, and substantially injurious to consumers in Florida.

80.     Defendants' deception as described herein was and is likely to deceive a consumer acting reasonably in the same circumstances.

81.     As a result of Defendants' unfair, unconscionable and deceptive practices as set out herein, Plaintiffs suffered a loss, were aggrieved, and suffered actual damages. Plaintiffs suffered actual damages in that the value of the Products as purchased was less than the value of the Products as represented.

82.     Accordingly, pursuant to Fla. Stat. § 501.211(1), Plaintiffs and the Florida Class seek a declaratory judgment and court order enjoining the above-described wrongful acts and practices of Defendants and for restitution and disgorgement.

83.     Additionally, Plaintiffs, on their own behalf and on behalf of the Florida Class Members, make claims for all available damages as well as for attorney's fees and costs as provided in Fla. Stat. §§ 501.211 and 501.2105.

## COUNT III

### Violation of the Missouri Merchandising Practices Act

*(On Behalf of the Missouri Class)*

84.     Plaintiffs repeat and re-allege the allegations of the preceding paragraphs as if fully set forth herein.

85.     Missouri's Merchandising Practices Act (the "MMPA") prohibits the act, use, or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce.  Mo. Rev. Stat. § 407.020.

86.     Defendants' conduct constitutes the act, use or employment of deception, fraud, false pretenses, false promises, misrepresentation, unfair practices and/or the concealment, suppression, or omission of any material facts in connection with the sale or advertisement of any merchandise in trade or commerce because Defendants misrepresent the thread counts of the Products.

87.     The mispresented thread count also creates the false impression and has the tendency and capacity to mislead consumers (*see* Mo. Code Regs. Ann. tit. 15, § 60-9.020) into believing that the Products are of a higher quality and luxury than they in fact are.  Moreover, the overall format and appearance of the Products have the tendency and capacity to mislead

consumers (15 Mo. Code Regs. Ann. tit. 15, § 60-9.030) because they create the false impression that the Products have a higher thread count than they actually do.

88.    The Products were therefore worth less than the Products as represented, and Plaintiffs and Class Members paid extra or a premium for them.

89.    Plaintiffs and Class Members purchased the Products for personal, family, or household purposes and thereby suffered an ascertainable loss as a result of Defendants' unlawful conduct as alleged herein, including the difference between the actual value of the Product and the value of the Product if they had been as represented.

## COUNT IV

### Unjust Enrichment

*(On Behalf of the Nationwide Class)*

90.    Plaintiffs repeat and re-allege the allegations of the preceding paragraphs as if fully set forth herein.

91.    By purchasing the Products, Plaintiffs and the class members conferred a benefit on Defendants in the form of the purchase price of the fraudulent Products.

92.    Defendants appreciated the benefit because, were consumers not to purchase the Products, Defendants would have no sales and make no money and could not profit from their deception.

93.    Defendants' acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by Defendants' fraudulent and misleading representations about the Products.

94.    Equity cannot in good conscience permit Defendants to be economically enriched for such actions at Plaintiffs' and Class Members' expense and in violation of law, and therefore restitution and/or disgorgement of such economic enrichment is required.

## COUNT V

### Breach of Express Warranty

*(On Behalf of the Nationwide Class)*

95.    Plaintiffs repeat and re-allege the allegations of the preceding paragraphs as if fully set forth herein.

96.    Defendants made the affirmation of fact and the promise to Plaintiffs and the class members that the Products were of particular thread counts, guaranteeing to Plaintiffs and the class members that the Products were in conformance with those representations.

97.    These affirmations of fact and promises became part of the basis of the bargain in which Plaintiffs and class members purchased Defendants' Products, and Plaintiffs and class members relied on the affirmations when making their purchasing decisions.

98.    Defendants breached their express warranty that the Products were of a particular thread count by providing Plaintiffs and class members with Products that were not of the represented thread count.

99.    As a result of Defendants' breach of warranty, Plaintiffs and the class members have been deprived of the benefit of their bargain in that they bought Products that were not what they were was represented to be, and they have spent money on Products that had less value than was reflected in the premium purchase price they paid for the Products.

100.    Because Defendants have actual knowledge that their Products are not as warranted, pre-suit notice of this claim is not required.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all similarly situated persons, prays the Court:

a.   Grant certification of this case as a class action;

b.   Appoint Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel;

c.   Award compensatory damages to Plaintiffs and the proposed Classes, or, alternatively, require Defendants to disgorge or pay restitution of its ill-gotten gains;

d.   Issue an injunction preventing Defendants from continuing their unlawful merchandising practices;

e.   Award pre- and post-judgment interest;

e.   Award reasonable and necessary attorneys' fees and costs;

f.   Award punitive damages; and

g.   For all such other and further relief as may be just and proper.

Dated: February 10, 2017          Respectfully submitted,

Paulette Kremmel, Angela Barnes, Jamie Kilgore, Travis Garner, Dominique Morrison, and Amy Hill, Individually, and on Behalf of a Class of Similarly Situated Individuals, Plaintiffs

By:   */s/ Matthew H. Armstrong*
Matthew H. Armstrong
ARMSTRONG LAW FIRM LLC
8816 Manchester Rd., No. 109
St. Louis MO 63144
Tel: 314-258-0212
Email: matt@mattarmstronglaw.com

24

and

Stuart L. Cochran
R. Dean Gresham *(pro hac vice application forthcoming)*
Bruce W. Steckler *(pro hac vice application forthcoming)*
L. Kirstine Rogers *(pro hac vice application forthcoming)*
STECKLER GRESHAM COCHRAN PLLC
12720 Hillcrest Rd., Ste. 1045
Dallas, TX 75230
(p) 972.387.4040
(f) 972.387.4041
stuart@stecklerlaw.com
dean@stecklerlaw.com
bruce@stecklerlaw.com
krogers@stecklerlaw.com

Attorneys for Plaintiffs and the Putative Class